UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELICIA ROSA, | |
| Plaintiff, | |
| -against- | |
| PATHSTONE CORPORATION; MEGAN JACKSON, DIRECTOR OF SECTION 8 ORANGE & SULLIVAN; DAMARIS GONZALEZ, DEPUTY QUALITY CONTROL; ZELMA DASILVA, SECTION 8 PORTABILITY WORKER; YYA ESTATES LLC/VERN S. LAZAROFF, | 23-CV-1071 (LTS)  ORDER TO AMEND |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, alleging that Defendants discriminated against her by terminating her subsidy in the Section 8 housing voucher program. She seeks injunctive relief and money damages. By order dated February 15, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file a second amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff, a participant in the federally subsidized Section 8 Housing Choice Voucher Program, brings this action against Pathstone Corporation, a local administrator of the program; Megan Jackson, Pathstone's Section 8 Director for Orange and Sullivan Counties; Damaris Gonzalez, Pathstone's Deputy of Quality Control and the Hearing Officer at Plaintiff's informal hearing; Zelma Dasilva, Pathstone's "Section 8 Portability Worker"; YYA Estates LLC, Plaintiff's landlord; and Vern S. Lazaroff, attorney for the landlord.

The following information is taken from Plaintiff's amended complaint and attached documents.[1] Plaintiff resides in an apartment in Port Jervis, Orange County, New York, for which she paid a subsidized rent under the Section 8 program. In September 2022, Plaintiff missed an inspection of the apartment by Pathstone because of ongoing Family Court proceedings in Kings County, New York, relating to her three minor children. The Administration for Children's Services ("ACS") had placed the children in the care of their grandmother, Plaintiff's mother, in Brooklyn, New York, but when Plaintiff's mother became ill and was placed in a long-term care facility, Plaintiff came to Brooklyn to assist in taking care of her children.

On or about October 15, 2022, Plaintiff returned to her apartment and learned that she had missed the inspection. She reached out to Pathstone to reschedule and was informed by Defendant Dasilva that Pathstone had discovered that she had vacated the apartment. Plaintiff notified Pathstone that she had not vacated the apartment and was only away for three and a half weeks on a personal family matter. She also provided to Pathstone proof of utility payments and photos of her fully furnished apartment. Pathstone directed Plaintiff to provide proof of where her children were going to school.[2] Plaintiff sent Pathstone information indicating that her kids were temporarily attending school in New York City, along with an explanation. On October 19, 2022, however, Defendant Jackson, on behalf of Pathstone, sent Plaintiff a termination notice, informing her that it intended to terminate her Section 8 subsidy for "[n]ot using the unit as a

---

[1] On February 14, 2023, Plaintiff filed an amended complaint of her own volition.

[2] Plaintiff attaches to the amended complaint a "Notice of Infraction" from Pathstone dated October 14, 2022, stating that her children were not enrolled in the Port Jervis School district and requesting proof of where she and the children were living and where the children were attending school. (ECF 5, at 18.) The Notice further stated that"[f]ailure to provide this information will leave [Pathstone] with no choice but to begin the intent to terminate [Plaintiff's] assistance for vacating the property without notice." (Id.)

primary residence." (ECF 5, at 35.)[3] The notice also quoted applicable regulations indicating that Plaintiff had breached her obligations under the Section 8 program, which required that a "family must use the assisted unit for residence by the family," and [t]he unit must be the family's only residence." (Id.) The notice also informed Plaintiff that she had the right to appeal the decision by requesting an informal hearing.

On December 5, 2022, an informal hearing was held before Defendant Gonzalez, and on January 23, 2023, Pathstone informed Plaintiff that it intends to terminate her Section 8 subsidy, effective April 30, 2022, because she had failed to use the subsidized apartment as her primary residence. (Id. at 31.) On January 31, 2023, Defendant Lazaroff, on behalf of Plaintiff's landlord, sent Plaintiff a notice that her tenancy was being terminated and she must vacate the premises by March 31, 2023, to avoid the commencement of eviction proceedings against her. (Id. at 14.) The next day, Plaintiff received from Pathstone a Repayment Agreement, which indicated that Pathstone had overpaid subsidies on her behalf of $27,690, which she had to repay. (Id. at 34, 38-39.)

On February 14, 2023, Plaintiff, who is African-American, filed a housing discrimination complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that Pathstone and its employees discriminated against her "on false or falsified documents and [she] believe[s] that this this is racially motivated or the facts that [she is] the only Black tenant" in her apartment building. (Id. at 41.) She also filed a discrimination complaint with the New York State Division of Humans Rights ("NYSDHR") in which she

---

[3] The Court quotes from the amended complaint and other documents verbatim. Unless otherwise indicated, all grammar, spelling, punctuation, and emphasis are as in the original.

identifies as being Bipolar and alleges racial and disability-based discrimination. (*Id*. at 23-29, 32-22.) Plaintiff does not specify the status of the HUD and NYSDHR complaints.

Plaintiff brings this action asserting that Pathstone's actions were "mostly motivated by discriminatory practices policies" in violation of the Fair Housing Act. (*Id*. at 5.) She claims that Pathstone did not brief her on the rules or policies relating to her children being "temporarily out of the home," and relied on false statements to terminate her Section 8 subsidies. (*Id*. at 11.) Plaintiff also alleges that she faces "possible eviction" because of Pathstone's "wrongful termination" of her Section 8 subsidies. (*Id*. at 6.) Plaintiff further notes that Pathstone's attempt to recoup the alleged overpayment of subsidies could "prevent [her] from ever receiving housing assistance in the future [and] was done to cause economic and housing inequality." (Id.) She seeks injunctive relief and damages.

Shortly after commencing this action, Plaintiff filed a motion for a temporary restraining order and an unsigned order to show cause for a preliminary injunction and temporary restraining order with a supporting declaration. (ECF 7-8.) Plaintiff seeks to enjoin Pathstone from further pursuing her alleged overpayment of subsidies and to restrain YYA Estates from bringing eviction proceedings against her. Plaintiff challenges Pathstone's assertion that she had vacated the apartment, contending that Defendants are discriminating against her.

## DISCUSSION

### A.     Fair Housing Act Claims

Plaintiff brings this action following the termination of her benefits under the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937 ("Section 8"), as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f.

Plaintiff asserts that Pathstone, a local administrator of the program,[4] and its employees have discriminated against her in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, by terminating her Section 8 subsidies.[5] She also sues her landlord and his attorney for the termination of her tenancy .

The FHA "broadly prohibits discrimination in housing." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Specifically, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . , national origin," or disability. 42 U.S.C.§ 3604(b), (f). The FHA also prohibits retaliation against persons who have asserted their rights under the FHA. *See id.* § 3617 (unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [among others, §§ 3604 and 3605] of this title"). To state a claim under the FHA, a plaintiff must plausibly allege that: (1) she was a member of a class protected by the FHA, and (2) she suffered an adverse housing

---

[4] Section 8 authorizes the Secretary of the United States Department of Housing and Urban Development ("HUD") to "enter into contracts with state and local public housing agencies ('PHAs') to provide financial assistance to low-income individuals or families renting housing on the private rental market." *Augusta v. Cmty Dev. Corp. of Long Island, Inc.*, No. 07–CV–0361, 2008 WL 5378386, at *1 (E.D.N.Y. Dec. 23, 2008). Although local and state PHAs are responsible for the administration of the program, *see* 42 U.S.C. § 1437(a)(1)(C), PHAs may contract with local administrators to administer the program, *Augusta*, 2008 WL 5378386, at *1. In New York, the New York State Division of Housing and Community Renewal acts as the PHA for all local programs and has contracts with local administrators such as Pathstone. *See id.*; *see also* https://hcr.ny.gov/section-8-housing-choice-voucher-hcv-program (last visited Mar. 17, 2023); https://pathstone.org/section-8/ (last visited Mar. 17, 2023).

[5] The Court assumes for the purposes of this order that the FHA covers Plaintiff's residence. *See* 42 U.S.C. § 3604(b) (defining "dwelling," in part, as a "building" that is "occupied as . . . a residence by one or more families").

action because of her membership in that protected class. *See Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (LBS), 2012 WL 3288240, at \*7 (S.D.N.Y. Aug. 6, 2012).

 Here, Plaintiff asserts that Defendants subjected her to discrimination in housing, but she does not allege any facts suggesting a violation of the FHA. She does not allege facts suggesting that (1) Defendants did anything to discriminate against her based on her race, (2) she exercised her rights under the FHA, or that (3) Defendants coerced, intimidated, or threatened her, or interfered with her exercise of those rights because of her race. *See* 42 U.S.C. § 3604, 3617. Although Plaintiff asserts that Pathstone and its employees were "mostly motivated by discriminatory practices policies" (ECF 5, at 5), she only specifically references race in her HUD and NYSDHR discrimination complaints but without any facts from which the Court can infer that any action taken against her was because of her race. Further, she makes no allegations against her landlord or its attorney suggesting discrimination. Because Plaintiff does not allege any facts plausibly suggesting that Defendants subjected her to discrimination or retaliation in housing on the basis of any impermissible factor, she fails to state a claim under the FHA. The Court therefore dismisses Plaintiff's claims under the FHA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

 Because Plaintiff asserts that Pathstone and its employees discriminated against her on the basis of her race, however, the Court, in an abundance of caution, grants her 60 days' leave to file a second amended complaint in which she alleges additional facts suggesting an FHA claim against these defendants. If Plaintiff files a second amended complaint, the pleading should include specific facts describing how a named defendant discriminated against Plaintiff in housing because of her race or other impermissible factors. As Plaintiff does not allege any facts suggesting that YYA Estates LLC, her landlord; and Vern S. Lazaroff, the landlord's attorney,

were in any way involved in the alleged discriminatory conduct, the Court declines to grant her leave to amend her FHA claims against these two defendants.

**B.      Constitutional Claims against Pathstone and its Employees**

Plaintiff may also be attempting to assert Fourteenth Amendment due process and equal protection claims under 42 U.S.C. § 1983, concerning Pathstone's termination of her Section 8 subsidies.[6] The Court examines whether she has asserted sufficient facts to support such claims against Pathstone and its employees.

**1.      The Due Process Clause**

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted).

Section 8 recipients have a well-established property interest in continuing to receive rental assistance that is subject to procedural due process protections. *See A.S. v. Been*, 228 F. Supp. 3d 315, 317 (S.D.N.Y. Jan. 23, 2017); *Junior v. N.Y.C. Hous. Pres. & Dev. Corp.*, No. 12-

---

[6] To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

CV-3846 (PAC), 2013 WL 646464, at \*6 (S.D.N.Y. Jan. 18, 2013); *Rios v. Town of Huntington Hous. Auth.*, 853 F. Supp. 2d 330, 338 (E.D.N.Y. 2012). As Plaintiff had an interest in receiving Section 8 subsidies, the Court must evaluate whether she received adequate process before she was deprived of that interest.

When evaluating whether due process was constitutionally adequate, courts distinguish between claims predicated on established state procedures and those based on random, unauthorized acts. *See Rivera–Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). Where the government deprives a plaintiff of some property interest pursuant to an established procedure,[7] procedural due process is generally satisfied so long as some form of hearing is provided before the individual is deprived of the property interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). By contrast, where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate post-deprivation remedy); *Rivera–Powell*, 470 F.3d at 465 (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy").

---

[7] Conduct is undertaken in accordance with established state procedures when, for example, it is "'pursuant to a statute, code, regulation, or custom,'" or is the result of a decision made by a high-ranking official with "'final authority over significant matters.'" *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (quoting *Chase Grp. Alliance LLC v. City of New York Dep't of Fin.,* 620 F.3d 146, 152 n.3 (2d Cir. 2010)).

If the deprivation was based on established state procedures, the Court must address whether the process provided satisfies due process. *Rios*, 853 F. Supp. 2d at 337. "[D]ue process requires a defendant to meet certain procedural safeguards before terminating a recipient's public housing assistance, including: (1) timely and adequate notice stating the reason for termination, (2) an opportunity to appear at a pre-termination hearing, to present evidence, and to confront and cross-examine witnesses, (3) a right to representation by counsel during the hearing, (4) a post-hearing decision that rests 'solely on the legal rules and evidence adduced at the hearing,' which is demonstrated by a statement of the decisionmakers 'reasons for his determination' and an indication of 'the evidence he relied on,' and (5) an impartial decisionmaker." *Handy v. City of New Rochelle*, 198 F.Supp.3d 298, 305 (S.D.N.Y. 2016) (quoting *Goldberg*, 397 U.S. at 266-71); *see also* 42 U.S.C. § 1437d(k) (setting forth similar criteria).

Here, Plaintiff's assertions suggest that Pathstone terminated her Section 8 subsidies pursuant to established procedure. *See Rivera v. Town of Huntington Hous. Auth.*, 2012 WL 1933767, at *5 (E.D.N.Y. May 29, 2012) (finding that terminating a Section 8 tenant for failure to adhere to his or her obligations is based on established state procedure). Plaintiff attaches documents to her amended complaint indicating that before terminating her Section 8 subsidies, Pathstone provided to her the following: (1) a Notice of Infraction dated October 14, 2022, asking for proof of where she and her children reside and where the children were registered for school (ECF 5, at 18); (2) a notice dated October 19, 2022, of "Intent to Terminate Housing Assistance" for not using the apartment as a primary residence (*id*. at 35); (3) a notice dated October 24, 2022, of an informal hearing scheduled for December 5, 2022 (*id*. at 20); and (4) a decision dated January 23, 2023, after the informal hearing, indicating that Plaintiff's subsidies were being terminated for violation of her obligations under the program (*id*. at 31).

Plaintiff's main contention is that there was no basis for Pathstone's conclusion that she had vacated the apartment because her children are temporarily living elsewhere. The amended complaint and supporting documents indicate that Plaintiff was provided with appropriate notice of the reasons for termination and was given an opportunity to appear at an informal hearing. Although Plaintiff does not point out any specific procedural deficiencies by Pathstone, she does assert in her NYSDHR complaint that Defendant Gonzalez, the Hearing Officer, rendered "a prejudice deci[sion] predetermined not based on facts or evidence" (*id.*, at 26), and that there were multiple issues concerning her attorney, including that she was not given sufficient time to consult with him before the hearing (*see id.*, at 26-27). Plaintiff's assertions could be construed as claims that the evidence provided at the hearing was insufficient to permit Pathstone to establish that she was not living in the apartment, bringing the fourth *Goldberg* factor into play; that the Hearing Officer was not impartial, in violation of the fifth *Goldberg* factor; or that the issues relating to her representation affected her right to counsel during the hearing, as required under the third *Goldberg* factor. Because Plaintiff does not provide facts relating to the December 5, 2022, hearing or the issues concerning her attorney, the Court cannot make any determination at this time whether she has alleged sufficiently that she was not afforded due process in the termination of her Section 8 subsidies.

Because it is unclear whether Plaintiff may be able to assert due process claims against Pathstone, the Court grants Plaintiff leave to amend her complaint. Should Plaintiff choose to amend her complaint, she must allege facts suggesting that Pathstone and its employees failed to provide her due process in accordance with the *Goldberg* factors described above.

### 2.     The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). To state an equal protection claim, a plaintiff must allege "purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). As a general rule, the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest. *See Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiff asserts that Pathstone and its employees discriminated against her but does not plead facts showing that any defendant violated her rights under the Equal Protection Clause. She does not allege any facts supportive of the conclusion that Defendants treated her differently from similarly situated individuals "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [her]." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis and internal quotation marks omitted). Plaintiff's generalized claims of discrimination fail to state an equal protection claim for relief.

## C.  Constitutional Claims against Plaintiff's Landlord and its Attorney

Plaintiff also brings claims against her landlord and her landlord's attorney for terminating her tenancy and notifying her that she must vacate the apartment by March 31, 2023, to avoid eviction proceedings. A claim for relief under Section 1983 may only be asserted against a state actor and as a general rule, a private landlord and his attorney are not state actors. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted). Because the landlord and attorney are private parties, there is no state action

12

for the purposes of the Fourteenth Amendment.[8] *See Reyes-Garay v. Integrand Assur. Co.*, 818 F. Supp. 2d 414, 434 (D.P.R. 2011) (finding that landlord who contracted with the state to provide Section 8 housing was "clearly a private entity"). The Court dismisses Plaintiff's Section 1983 claims against YYA Estates LLC and Vern S. Lazaroff for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      State Law Claims**

Plaintiff's assertions may implicate claims under state law. Under 28 U.S.C. § 1367(c)(3), a federal district court is authorized to decline to exercise supplemental jurisdiction of state law claims once it has dismissed all of the federal claims of which it had original jurisdiction. *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("Generally, when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.").

Because it is not clear that Plaintiff can state any federal claim, the Court will determine at a later time whether to exercise supplemental jurisdiction of any state law claims Plaintiff seeks to raise in the second amended complaint. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state law claims where no federal claims remained).

---

[8] Even if Plaintiff had alleged facts suggesting these defendants are state actors for the purposes of Section 1983 because of the landlord's participation in the Section 8 program, she fails to allege that these defendants were personally and directly involved in Pathstone's termination of her Section 8 subsidies. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

**E.**     **Request for Injunctive Relief**

The Court denies Plaintiff's request for preliminary injunctive relief and a temporary restraining order. To obtain such relief, Plaintiff must show: (1) that she is likely to suffer irreparable harm, and (2) either (a) a likelihood of success on the merits of her case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

As set forth above, Plaintiff fails to allege facts sufficient to state a claim of discrimination in housing in violation of the FHA or due process or equal protection claims under the Fourteenth Amendment. The Court therefore finds that Plaintiff has not, at this time, shown (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. Accordingly, Plaintiff's request for preliminary injunctive relief is denied without prejudice to renewal at a later date.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the FHA or the Fourteenth Amendment against Pathstone and its employees, the Court grants Plaintiff 60 days' leave to submit a second amended complaint. As Plaintiff does not allege any facts suggesting that YYA Estates LLC and Vern S. Lazaroff violated her rights, the Court dismisses her FHA and Section 1983 claims against these two defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff is granted leave to amend her complaint for the second time to provide more facts about her claims. In the "Statement of Claim" section of the second amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the second amended complaint that Plaintiff wants the Court to consider in deciding whether the second amended complaint states a claim for relief. That information should include:

   a) the names and titles of all relevant people;

   b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

   c) a description of the injuries Plaintiff suffered; and

   d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated her federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wants to include from the amended complaint must be repeated in the second amended complaint.

Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this court. The clinic is run by a private organization; it is not part of, or run by, the court. It cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

Plaintiff is granted leave to file a second amended complaint that complies with the standards set forth above. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Second Amended Complaint," and label the document with docket number 23-CV-1071 (LTS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the amended complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court dismisses Plaintiff's claims against YYA Estates LLC and Vern S. Lazaroff for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The

Court also denies Plaintiff's order to show cause for preliminary injunction and temporary restraining order (ECF 7-8). All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

A NYLAG flyer is attached to this order.

SO ORDERED.

Dated:   April 27, 2023
         New York, New York

                              /s/ Laura Taylor Swain
                                 LAURA TAYLOR SWAIN
                              Chief United States District Judge

# NYLAG
New York | Legal Assistance Group

## Services Provided for Self-Represented Litigants in the Southern District of New York

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York provides free limited legal assistance to individuals who are representing themselves or planning to represent themselves in civil lawsuits in federal court in Manhattan and White Plains. The clinic is staffed by attorneys, law students, and paralegals. Information given to clinic staff is confidential.

### Clinic Staff Can:

- Advise on filing cases in federal court, including on the issue of whether a case should be filed in the Southern District of New York or somewhere else;
- Provide legal advice in response to questions that come up at any stage of litigation;
- Assist in getting additional information or research into the legal issue in your case;
- Review and explain court orders and filings by your opponent, and provide an overview of the federal legal process in civil cases generally;
- Assist with motions, discovery, and strategy;
- Assist with getting ready for depositions, pretrial conferences, mediations, and court appearances;
- Provide forms and instructions manuals;
- In appropriate cases, help you retain pro bono counsel;
- In appropriate cases, represent you in a mediation through the Southern District's Alternative Dispute Resolution Program, or a court-ordered settlement conference;
- In appropriate cases, represent you at a deposition; and
- In appropriate cases, provide referrals to other agencies and organizations that provide civil legal services and/or social services.

### Clinic Staff Cannot:

- Assist with federal civil cases that belong in a different federal court, such as the Eastern District of New York, which covers of New York, which covers Brooklyn, Queens, Staten Island, and Nassau and Suffolk Counties;
- Assist with an appeal of your federal case;
- Assist with state court cases, bankruptcy court cases, or criminal cases;
- Pay any of the costs associated with filing or defending a lawsuit in federal court;
- File documents with the court on your behalf;
- Appear on your behalf other than representation at a mediation through the Southern District's Alternative Dispute Resolution Program, a court-ordered settlement conference, or, in appropriate cases, a deposition;
- Write court documents for you; or
- Conduct an investigation into the facts of your case.

### Clinic Staff May Decline Assistance If:

- NYLAG has already given advice to your opponent;
- Your legal problem is beyond the scope of matters handled by the clinic;
- Providing assistance would conflict with the New York Rules of Professional Conduct;
- Your income and/or assets are high enough to allow you to retain private counsel; or
- NYLAG determines, in its professional legal judgement, that (i) you have refused to cooperate with the Clinic's counsel or follow the Clinic's advice; (ii) any assistance would be unreasonably difficult for NYLAG to carry out; or (iii) your case is or will become frivolous, unreasonable, groundless, or without merit.

Use of the NYLAG Legal Clinic for Pro Se Litigants is separate from any appointment of counsel by the court. A request for appointment of counsel requires a separate application and the decision whether to appoint counsel is entirely up to the court. Even if a litigant has consulted with Clinic staff, unless they retain other counsel and that counsel enters a notice of appearance, they remain unrepresented; are responsible for doing whatever is necessary in connection with the case; and must still submit all court papers to the Pro Se Intake Unit, located in Room 105 of the Daniel Patrick Moynihan Courthouse, 40 Foley Square, New York, New York, or by following the court's instructions for filing via email as a pro se litigant.

New York: Thurgood Marshall United States Courthouse | Room LL22 | 40 Foley Square | New York, NY 10007 | (212) 659 6190 | https://nylagoi.legalserver.org/modules/matter/extern_intake.php?pid=142&h=cea984&



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

\_\_\_\_\_CV_____
(Include case number if one has been assigned)

-against-

**AMENDED**

**COMPLAINT**

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____, is a citizen of the State of
                          (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name                     Middle Initial          Last Name

_____

Street Address

_____

County, City                              State                   Zip Code

_____         _____

Telephone Number                          Email Address (if available)

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                   State                    Zip Code

Defendant 2:

First Name                                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                   State                    Zip Code

Defendant 3:

First Name                                     Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                   State                    Zip Code

Defendant 4:

_____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                        State                    Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
| --- | --- | --- |
| First Name | Middle Initial | Last Name |
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.