UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELICIA ROSA,

       Plaintiff,

  v.

PATHSTONE CORPORATION, MEGAN JACKSON,
DAMARIS GONZALEZ, *and* ZELMA DASILVA,

       Defendants.

No. 23-CV-1071 (KMK)

ORDER

---

Appearances:

Felicia Rosa
Port Jervis, NY
*Pro Se Plaintiff*

KENNETH M. KARAS, United States District Judge:

### I.  Background[1]

On October 12, 2023, Plaintiff Felicia Rosa ("Plaintiff"), proceeding pro se, filed a Motion for a Temporary Restraining Order ("TRO") or an Injunction ("TRO Motion") relating to an eviction proceeding brought against her in state court.  (*See* Not. of Mot. (Dkt. No. 25); Decl. in Supp. of TRO Mot. ("Rosa Decl.") (Dkt. No. 26).).  The next day, the Court issued an Order, in which it declined to rule on Plaintiff's TRO Motion and directed Plaintiff to supplement it by

---

[1] The Court provided additional background information regarding this Action in its October 13, 2023 Order.  (*See* Order ("Oct. 13, 2023 Order") 1–3 (Dkt. No. 27).)
 Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

explaining whether (1) she is likely to succeed in the instant Action, or that there are sufficiently serious questions going to the merits of this case to make them a fair ground for litigation; (2) the balance of hardships tips in her favor; and (3) the public interest would not be disserved by the issuance of an injunction.  (*See* Oct. 13, 2023 Order 5.)

Plaintiff supplemented her TRO Motion on October 14 and 15, 2023, by filing (1) a new Motion for Injunctive Relief and an accompanying Memorandum of Law, (*see* Mot. for Injunctive Relief ("Oct. 14, 2023 Mot.") (Dkt. No. 28); Mem. of Law in Supp. of Mot. for Injunctive Relief ("Oct. 14, 2023 Mem.") (Dkt. No. 30)), and (2) a *separate*, new Motion for Injunctive Relief and another accompanying Memorandum of Law, (*see* Mot. for Injunctive Relief ("Oct. 15, 2023 Mot.") (Dkt. No. 29); Mem. of Law in Supp. of Mot. for Injunctive Relief ("Oct. 15, 2023 Mem.") (Dkt. No. 31)).[2]  Both of these Motions seek "an injunction preventing Defendants from taking any further retaliatory or discriminatory actions against [] Plaintiff[,]" the "[r]einstate[ment of] Plaintiff's Section 8 housing assistance[,]" the "[p]revent[ion of] any eviction processes against the Plaintiff[,]" and "any other relief the Court deems just and proper." (Oct. 14, 2023 Mot. 2; Oct. 15, 2023 Mot. 2.)

As explained below, Plaintiff has not demonstrated that she is likely to succeed on the merits and, thus, the Court denies Plaintiff's TRO Motion and Motions for Injunctive Relief without prejudice.

---

[2] The Court notes that Plaintiff seems to believe that YYA Estates LLC ("YYA Estates") is still a Defendant in this Action.  (*See* Oct. 14, 2023 Mot. (naming YYA Estates in the case caption); Oct. 14, 2023 Mem. (same); Oct. 15, 2023 Mot. (same); Oct. 15, 2023 Mem. (same).)  It is not.  Chief Judge Laura T. Swain dismissed YYA Estates from this case on April 27, 2023, (*see* Order to Amend 16–17 (Dkt. No. 10)), and Plaintiff did not name that entity in her Second Amended Complaint ("SAC"), (*see generally* SAC (Dkt. No. 11); SAC Ex. 1 (Dkt. No. 11-1)).

II.  Discussion

A.  Standard of Review

The standard for the entry of a TRO is the same as for a preliminary injunction. *See Echo Design Grp., Inc. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) ("The standard for granting a [TRO] and a preliminary injunction pursuant to Rule 65 of the Federal Rules of [Civil] Procedure are identical."). "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration and quotation marks omitted).

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty. [She] need only make a showing that the probability of . . . prevailing is better than fifty percent.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)), *appeal dismissed as moot sub nom*. *Broker Genius Inc. v. Gainor*, 756 F. App'x 81 (2d Cir. 2019).

B.  Analysis

In the SAC, Plaintiff alleges four causes of action: (1) a claim under the Equal Protection Clause; (2) a due process claim; (3) a claim under the Fair Housing Act (the "FHA"); and (4) a claim under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"). (*See* SAC Ex. 1 ¶¶ 14–17.)  The Court addresses each of these claims in turn.

3

First, Plaintiff brings an equal protection claim, alleging that "[she] was discriminated against based on [her] source of income, parental status, and [] race." (*Id.* ¶ 14.) "[T]o assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with similarly situated individuals,' and (2) 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)). This requires a showing of "discriminatory intent or purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (holding that a plaintiff must allege "that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination"). Here, Plaintiff asserts that her "housing worker terminated [her] Section 8 assistance, alleging that [her] children were not enrolled in school in Port Jervis. This discriminatory action was utilized to falsely claim that [she] had vacated [her] unit, leading to [her Section 8] termination." (SAC Ex. 1 ¶ 14.) Although, Plaintiff's allegations may establish adverse treatment, she has not established that she is likely to succeed on the merits because her own evidence suggests that Defendant Pathstone Corporation and Defendant Megan Jackson's decision to terminate her Section 8 housing assistance was based upon applicable federal regulations. (*See* SAC Ex. 4 at 3 (Dkt. No. 11-4) (letter alleging Plaintiff had breached certain regulatory requirements for receipt of Section 8 housing assistance (citing 24 C.F.R. § 982.551(h)–(i)))). Nothing about Defendants' conduct, which by Plaintiff's own admissions was based on regulations governing Section 8, suggests Plaintiff was treated differently than others in a similar situation based on her race, parental status, or income. For example, Plaintiff

4

offers no evidence that others outside of Plaintiff's classifications who have not been in compliance with the cited federal regulations were given a pass and allowed to stay as Section 8 tenants.

Second, Plaintiff brings a due process claim, alleging that "[t]hroughout [her Section 8] termination proceedings, [she has] been denied due process and fair treatment."  (SAC Ex. 1 ¶ 15.)  "To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived [her] of that right, and third show that the deprivation was effected without due process."  *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (citation, alterations, emphasis, and quotation marks omitted); *see also Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) ("The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))).  Here, Plaintiff avers that "[d]espite providing proof that [her] children [were] temporarily not in [her] care and [were] enrolled in schools in New York City, the [Section 8] termination process continued.  Additionally, during [a] virtual hearing on January 3, [2023,] the proceedings were marred by procedural irregularities and [the] denial of [her] right to be heard."  (SAC Ex. 1 ¶ 15.)  However, she has not established that she has a better-than-fifty-percent chance of prevailing on her due process claim, as she does not explain— or point to evidence demonstrating—why the multiple Section 8-related notices she received, as well as the virtual termination hearing she attended, entail insufficient process under these circumstances.  (*Id.* ¶¶ 5, 7–10 (setting forth the process Plaintiff did receive in connection with

5

the termination of her Section 8 housing assistance).)  Nor does Plaintiff offer any evidence that she would have prevailed at a hearing devoid of any alleged procedural infirmities.

Third, Plaintiff alleges that Defendants violated the FHA by "[d]iscriminating against [her] based on [her] source of income, parental status, and race."  (SAC Ex. 1 ¶ 16.)  Plaintiff also alleges that Defendants violated the Rehabilitation Act because, "[a]s a person with a disability, [she is] protected under [the Rehabilitation Act], and any discriminatory actions against [her] violate its provisions."  (*Id.* ¶ 17.)  "Under [both the FHA and the Rehabilitation Act], a plaintiff 'can base a discrimination claim on any of three available theories: [i] intentional discrimination (disparate treatment); [ii] disparate impact; and [iii] failure to make a reasonable accommodation.'"  *Skorupska v. 525 W. 52 Prop. Owner LLC*, 625 F. Supp. 3d 90, 109 (S.D.N.Y. 2022) (second, third, and fourth alteration in original) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)), *reconsideration denied*, No. 20-CV-2831, 2022 WL 17039035 (S.D.N.Y. Nov. 17, 2022).  Based on the allegations therein, the Court construes the SAC as alleging disparate treatment claims under both the FHA and the Rehabilitation Act.

Under the FHA, "a plaintiff asserting a claim of housing discrimination must establish that the basis upon which [s]he was discriminated against was *a* significant factor in the position taken by the defendants." *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 226 (S.D.N.Y. 2016) (emphasis in original) (quotation marks omitted); *accord L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 400 (S.D.N.Y. 2013) ("[F]or disparate treatment cases, [t]o establish a prima facie case of discrimination under the FHA [], the plaintiffs must present evidence that animus against the protected group was *a* significant factor in the position taken by the defendant."(second and third alterations and emphasis in original) (quotation marks omitted)).  By contrast, "to establish a prima facie case of discrimination under the Rehabilitation Act . . . , a plaintiff must show that

6

the defendants [engaged in discriminatory conduct] *solely* because of the disability." *Logan*, 175 F. Supp. 3d at 228 (emphasis in original) (alterations and citation omitted). Regardless of the applicable standard, however, Plaintiff here has not established a likelihood of success on the merits with respect to her FHA and Rehabilitation Act claims, because, as with her equal protection claim, she has not cast any doubt on the possibility that Defendants' decision to terminate her Section 8 housing assistance was based upon a valid, nondiscriminatory rationale, such as her alleged failure to comply with applicable federal regulations.

      Finally, with respect to Plaintiff's request for an injunction relating to the eviction proceedings against her, (*see* Rosa Decl. 1–3; Oct. 14, 2023 Mot. 2; Oct. 15, 2023 Mot. 2), the Court notes that the Anti-Injunction Act, 28 U.S.C. § 2283, would likely operate to prevent it from issuing such an injunction. "The Anti-Injunction Act provides that '[a] [c]ourt of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by [a]ct of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment.'" *Kristopher v. Stone St. Props., LLC*, No. 13-CV-566, 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29, 2013) (first and third alterations in original) (quoting 28 U.S.C. § 2283); *accord Milhaven v. Country Vill. Apartment*, No. 19-CV-2384, 2020 WL 5663380, at *9 (S.D.N.Y. Sept. 23, 2020). "This Act presents an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly construed exceptions." *Kristopher*, 2013 WL 499752, at *3. "Courts in [the Second] Circuit have repeatedly held that the Anti-Injunction Act bars a federal court from enjoining state-court eviction proceedings." *Allen v. N.Y.C. Hous. Auth.*, No. 10-CV-1644956, 2010 WL 1644956, at * 3 (S.D.N.Y. Apr. 20, 2010); *see also Milhaven*, 2020 WL 5663380, at *9–10 (explaining that the three statutory exceptions to the Anti-Injunction Act did not apply where the plaintiff sought

7

to enjoin the defendant from evicting her); *Bosch v. Lamattina*, No. 08-CV-238, 2008 WL 4820247, at * 1, 8 (E.D.N.Y. Nov. 4, 2008) (ruling that Anti-Injunction Act barred federal district court from staying state-court eviction proceedings against plaintiff); *O'Neill v. Hernandez*, No. 08-CV-1689, 2008 WL 2963634, at *1 (S.D.N.Y. Aug. 1, 2008) ("[T]he Anti-Injunction Act bars this [c]ourt from enjoining [the p]laintiff's eviction proceedings."); *Baumgarten v. County of Suffolk*, No. 07-CV-539, 2007 WL 1490482, at *3–5 (E.D.N.Y. May 15, 2007) (denying plaintiff's request for a preliminary injunction because the Anti-Injunction Act barred the court from disturbing the Warrant of Eviction and Judgment of Possession obtained against the plaintiff).[3]

### III. Conclusion

Because Plaintiff has not demonstrated the requisite likelihood of success on the merits, the Court denies Plaintiff's TRO Motion, as well as her subsequent Motions for Injunctive Relief, without prejudice.[4] The Clerk of Court is respectfully directed to terminate the pending

---

[3] Separate and apart from the foregoing analysis, "[b]ased on a review of the papers submitted in support of [P]laintiff['s Motions,] there is no evidence that [P]laintiff[] ha[s] provided any type of notice to [D]efendants regarding the filing of th[ese] . . . request[s] for injunctive relief or that [such] notice should not be required." *Blast v. Fischer*, No. 07-CV-567SR, 2007 WL 2815754, at *2 (W.D.N.Y. Sept. 20, 2007); *see* Fed. R. Civ. P. 65(a)(1), (b)(1); *accord Akinlawon v. Polanco*, No. 21-CV-2621, 2022 WL 3646004, at *2 (S.D.N.Y. Aug. 24, 2022). "[I]n the absence of such notice to [D]efendants, neither a [TRO] nor a preliminary injunction can issue[]" under the circumstances present here. *Blast*, 2007 WL 2815754, at *2; *see also Parker v. DeBuono*, No. 98-CV-5765, 2000 WL 223841, at *1 (S.D.N.Y. Feb. 25, 2000) ("Even though pro se litigants are generally offered wider latitude than those represented by an attorney, they are still required to follow the Federal Rules of Civil Procedure . . . ." (citation omtitted)), *aff'd sub nom. Parker v. Comm'r DeBuono*, 242 F.3d 366 (2d Cir. 2000).

[4] To be clear, in so holding, the Court does not necessarily suggest that Plaintiff *cannot* succeed on the merits, or even that she has not stated a claim upon which relief can be granted; rather, the Court simply holds that Plaintiff has not established a likelihood of success on the merits on the record before it.

Motions, (*see* Dkt. Nos. 25, 28–29), to mail a copy of this Order to Plaintiff, and to note that mailing on the public docket.

  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and in forma pauperis status is thus denied for the purpose of appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

DATED:  October 18, 2023
      White Plains, New York

                   KENNETH M. KARAS
                   UNITED STATES DISTRICT JUDGE